AO 106 (Rev. 04/10)  Application for a Search Warrant (Modified: WAWD 10-26-18)

# UNITED STATES DISTRICT COURT
for the
Western District of Washington

FILED _____ LODGED
_____ RECEIVED

03/10/2021

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY _____ DEPUTY

In the Matter of the Search of                )
*(Briefly describe the property to be searched*    )
*or identify the person by name and address)*     )     Case No.   3:21-mj-05054
Four (4) cell phones, more fully described in    )
Attachments A, and A1-A4, attached hereto and   )
incorporated herein by reference                )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
Four (4) cell phones, more fully described in Attachments A, and A1-A4, attached hereto and incorporated herein by reference.

located in the _____ Western _____ District of _____ Washington _____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B, attached hereto and incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 841a, 843, 846, 952 | Possession with intent to distribute and distribution of controlled substances; use of |
| 18 USC 1956, 1957 | communications facility in furtherance of drug offense; importation of controlled substances; money laundering; conspiracy to commit above offenses. |

The application is based on these facts:

✓  See Affidavit of Luke Brandeberry, continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Pursuant to Fed. R. Crim. P. 4.1, this warrant is presented: ☑ by reliable electronic means; or: ☐ telephonically recorded.

_____
*Applicant's signature*

Luke Brandeberry, Task Force Officer, DEA
*Printed name and title*

○ The foregoing affidavit was sworn to before me and signed in my presence, or
◉ The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone.

Date: _____ 03/10/2021 _____                      _____
                                                  *Judge's signature*

City and state:  Tacoma, Washington              Theresa L. Fricke, United States Magistrate Judge
                                                  *Printed name and title*

**AFFIDAVIT**

STATE OF WASHINGTON )
)   ss
COUNTY OF PIERCE )

I, Luke A. Brandeberry, Task Force Officer, Drug Enforcement Administration, United States Department of Justice, being first duly sworn on oath, depose and state:

## I.    AFFIANT BACKGROUND AND QUALIFICATIONS

1.    I am a Task Force Officer (TFO) of the DEA, currently assigned to the Tacoma Resident Office, located within the Seattle, Washington, Field Division.  As such, I am an investigative or law enforcement officer of the United States, within the meaning of Section 2510(7) of Title 18, United States Code, and am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code.  I have been a TFO since February of 2019.  I am a commissioned law enforcement officer of the Kent Police Department.  I have a total of 12 years' experience as a police officer.  During my time as a police officer, I have worked uniformed patrol, as well as plain clothes investigations.  As a detective with the Kent Police Department Special Investigations Unit and a TFO with the DEA, I have participated in hundreds of investigations that involved drug-related offenses.  These cases involved the use of undercover agents and confidential sources to investigate the trafficking of methamphetamine, heroin, cocaine, ecstasy, firearms, and various abused prescription drugs.  In many of these cases, I acted as the case agent, confidential source handler, and/or undercover purchaser.

2.    I am a graduate of McDaniel College, and hold a bachelor's degree in Sociology with emphasis in Criminal Justice.  In 2007, I completed a six-month entry-level police academy in Montgomery County, Maryland.  Since then, I have received over 300 hours of instruction specific to controlled substance and financial investigations.

3.    I am responsible for investigations involving specified unlawful activities, to include the distribution of methamphetamine, heroin, and cocaine in the Western

AFFIDAVIT of Task Force Officer Luke Brandeberry - 1

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   District of Washington.  I am also responsible for enforcing federal narcotics laws and
2   related statutes in the Western District of Washington.  I received training on the proper
3   investigative techniques for these violations, including the use of confidential sources,
4   undercover agents/officers, the identification of drug trafficking organizations and
5   identifying the movement of narcotics and narcotic proceeds to and from Western
6   Washington.  I have actively participated in investigations of criminal activity, including
7   but not limited to crimes against persons, crimes against property, and narcotics-related
8   crimes.  During these investigations, I have also participated in the execution of search
9   warrants and the seizure of evidence indicating the commission of criminal violations.
10  As a law enforcement officer, I have testified under oath, attested to applications in
11  support of search and arrest warrants, and obtained electronic monitoring orders.  I have
12  also assisted with several Title III (i.e., wiretap) investigations during my time as a DEA
13  TFO.  During those wiretap investigations, I have worked in the wire room where I have
14  gained experience with minimization and evidence gathering from this type of
15  investigation.

16       4.      I have participated in the debriefing of defendants, witnesses, and
17  informants, during which time I have discussed with them their methods of drug
18  smuggling, distribution, packaging, trafficking, avoiding law enforcement, and
19  laundering proceeds, among other concerns related to drug trafficking.  I have discussed
20  and learned from other law enforcement investigators in regards to these matters as well.

21       5.      Through my training and experience, I have encountered and become
22  familiar with various tools, methods, trends, paraphernalia and related articles utilized by
23  various traffickers in their efforts to import, export, conceal and distribute controlled
24  substances.  I am also familiar with the manner in which drug traffickers use telephones,
25  often cellular telephones, to conduct their unlawful operations, and how they code their
26  conversations to disguise their unlawful activities.

27       6.      I have obtained the facts set forth in this Affidavit through my personal
28  participation in the investigation described below; from oral and written reports of other

AFFIDAVIT of Task Force Officer Luke Brandeberry - 2

law enforcement officers; from witnesses and informants cooperating with law enforcement, and from records, documents and other evidence obtained during this investigation.  I have obtained and read official reports prepared by law enforcement officers participating in this investigation and in other investigations.

7.      Because I am submitting this Affidavit to establish probable cause to search the phones described further below, this Affidavit does not contain every fact known to me or learned during the course of this investigation.  Instead, I have set forth only the facts that I believe are essential to establish the necessary foundation for the issuance of such warrants and a fair determination of probable cause.

## II.      PURPOSE OF AFFIDAVIT

8.      I am submitting this Affidavit in support of an application to search the following four cell phones, as further described in Attachments A, and A1-A4, for evidence, fruits and instrumentalities of drug trafficking and related money laundering crimes committed by a drug trafficking organization (DTO) and its associates, in violation of Title 21, United States Code, Sections 841(a)(1), 843(b), 846, and 952, and Title 18, United States Code, Sections 1956 and 1957, as further described in Attachment B.  I have identified the cellular phones that investigators are requesting authorization to search in bold font throughout this Affidavit.  The four (4) phones are more particularly described as follows:

a)      **A black Alcatel flip cell phone** seized during the execution of a federal search warrant at the residence of Juan Antonio GONZALEZ-CARRILLO (731 West 148th Street, Gardena, California), and listed in DEA reports as **Exhibit N-107**, as further described in Attachment A1;

b)      **A Samsung Galaxy Note 9 cell phone** seized during the execution of a federal search warrant at the residence of Juan Antonio GONZALEZ-CARRILLO (731 West 148th Street, Gardena, California), and listed in DEA reports as **Exhibit N-108**, as further described in Attachment A2;

AFFIDAVIT of Task Force Officer Luke Brandeberry - 3

**c)**      **A white Apple Iphone** seized during the execution of a federal search warrant at the residence of Juan Antonio GONZALEZ-CARRILLO (731 West 148th Street, Gardena, California), and listed in DEA reports as **Exhibit N-109**, as further described in Attachment A3;

**d)**      **A blue Motorola cell phone** seized during the arrest of fugitive Jose Elias BARBOSA, and listed in DEA reports as Target Telephone 116 (**TT116**) and **Exhibit N-32**, as further described in Attachment A4.

9.      On July 23, 2020, the Grand Jury returned An Indictment against multiple DTO members, including Juan Antonio GONZALEZ-CARRILLO and Jose Elias BARBOSA in *United States v. Gomez Marentes, et al.*, 20-cr-00092-JCC.

10.      On July 28, 2020, investigators executed multiple coordinated search warrants targeting the DTO and arrested a number of the named defendants.  Although investigators attempted to arrest GONZALEZ-CARRILLO and BARBOSA, they were unsuccessful.  As detailed below, BARBOSA has since been arrested.  GONZALEZ-CARRILLO remains a fugitive.

11.      The first three cell phones, further described in Attachments A1 through A3, were seized on July 28, 2020, by DEA agents during the coordinated execution of warrants and arrests.  These three cell phones were seized from the residence of GONZALEZ-CARRILLO at 731 West 148th Street, Gardena, California, pursuant to a warrant authorized in the Central District of California.  The phones were secured in California and sent to the case agents in Tacoma, Washington on July 28, 2020.  Agents were not able to search these phones within the time provided by the search warrant, due to the delay in receiving these three phones from California.  These three phones were booked into evidence at the DEA in Tacoma, Washington pending application for a follow-up search warrant.

12.      The fourth phone was seized on September 30, 2020 during the arrest of fugitive DTO member Jose Elias BARBOSA in Kent, WA.  At the time of the arrest, DEA agents were tracking BARBOSA's phone (TT116), pursuant to a federal tracking

warrant.  Agents located BARBOSA based on the GPS pings provided by TT116.  At the time of BARBOSA's arrest, he was in possession of the **blue Motorola cell phone**, further described in Attachment A4, which was found in BARBOSA's pants pocket. Agents noted that the GPS tracking for TT116 moved with the location of the blue Motorola cell phone, to include when it was transported to the DEA Tacoma Resident Office (TRO) and booked into evidence.  Accordingly, agents believe that the **blue Motorola cell phone** is TT116.

13.    On October 19, 2020, the Honorable Brian A. Tsuchida, Chief United States Magistrate Judge authorized the search of the same four target devices listed in this affidavit (MJ 20-672).

14.    On October 22, 2020, intelligence personnel with the DEA Tacoma Resident Office attempted to examine and seize pertinent content from the devices and found that the devices were locked via password or other authentication method.  Agents were unable to retrieve any data from the devices using the examination equipment at-hand.  The devices were subsequently resealed and placed back into evidence at the Tacoma Resident Office.

15.    Since this time, investigators have learned that an alternate DEA facility possesses equipment with greater capabilities to unlock or bypass the locks on these devices.  For this reason, agents request authorization to attempt to re-examine the devices, including by using these greater capabilities.

### III.    SOURCES OF INFORMATION

16.    Confidential Source 6 (CS6) has worked with Homeland Security Investigations (HSI) Seattle since August 2018 and was previously a confidential source with the Valley Narcotics Enforcement Team (VNET) since November 2015.  CS6 is providing information and services in exchange for immigration benefits.  CS6 has a misdemeanor arrest/conviction for driving under the influence as well as a misdemeanor arrest/conviction for identity theft.  CS6 has two previous immigration arrests and voluntary departures from 1998.

AFFIDAVIT of Task Force Officer Luke Brandeberry - 5

17.     When this affidavit refers to vehicle ownership, either I or other agents involved in the investigation have reviewed the relevant state vehicle records from the Washington State Department of Licensing (DOL), or the equivalent agency in other states.  Similarly, when I refer to identification documents, either I or other agents involved in the investigation have reviewed the relevant driver license or similar records maintained by DOL or the equivalent agencies in other states.  When I refer to the criminal history of a subject, either I or other agents involved in the investigation have reviewed the available criminal history from state or federal agencies.  When I refer to telephone subscription records, either I or other agents involved in the investigation have reviewed the subscriber records obtained from the telephone company by administrative subpoena or court order, or I have obtained the information from other law enforcement officers familiar with this investigation.  When I refer to telephone toll records, either I or other agents involved in the investigation have received the information from the telephone company pursuant to an administrative subpoena or court authorized pen registers.  When I refer to beliefs or suspicions held by investigators, these beliefs or suspicions are based upon training and experience.

18.     In the following paragraphs, I describe communications between various individuals.  Except where specifically indicated with quotation marks, the descriptions are summaries of the conversations and are not intended to present a verbatim recitation of the words used by the participants.  I know through training and experience, as well as the training and experience of other law enforcement officers familiar with this investigation, that individuals involved in the distribution of controlled substances and other criminal activity often use vague references and/or coded words and phrases when discussing illegal activity.  When such words are used in the this investigation, I have used this training and experience, as well as the training and experience of other law enforcement officers familiar with this investigation, to include what I believe to be an accurate translation of these coded words and phrases.  In the context of transcribed calls, I have

1   included in parentheses the translation for coded words and phrases used by the
2   participants.

3       19.     All intercepted calls and text messages referenced in this Affidavit that
4   occurred in Spanish were monitored by linguists who have training and experience
5   monitoring and documenting intercepted communications in Spanish.  These linguists
6   also have training and experience interpreting coded drug-related conversations and
7   vague references to drug trafficking topics, both of which are tactics commonly used by
8   drug trafficking suspects in an attempt to conceal their illegal activities.  Unless otherwise
9   noted, the remaining communications detailed in this Affidavit occurred in Spanish, and
10   the English translations as provided by the linguists are set forth

11                          **IV.  PROBABLE CAUSE**

12   **A.    Introduction**

13       20.     This is a multi-agency investigation into a drug trafficking organization
14   (DTO) distributing multi-kilo quantities of narcotics in Western Washington.  Through
15   the use of confidential source information and traditional investigative techniques, agents
16   discovered that Juan Antonio GONZALEZ-CARRILLO, Jose Elias BARBOSA, and
17   others known and unknown, were involved in the distribution of methamphetamine,
18   heroin, and counterfeit oxycodone containing fentanyl, commonly referred to as M30s.
19   During this investigation, agents conducted multiple controlled purchases of drugs using
20   confidential sources, conducted physical and electronic surveillance, and intercepted
21   hundreds of calls and text messages by way of a court-authorized wiretap.  In July 2020,
22   federal law enforcement arrested a number of individuals associated with the DTO, who
23   are being prosecuted in *United States v. Gomez-Marentes, et al.*, CR 20-92-JCC.  In
24   December 2020, federal law enforcement arrested additional individuals associated with
25   the DTO, who are being prosecuted in *United States v. Valdez-Sanudo, et al.*, CR 20-
26   217JCC.  This investigation began in January 2019.
27
28

AFFIDAVIT of Task Force Officer Luke Brandeberry - 7

**B.     Summary of Authorizations to Intercept DTO Members[1]**

21.     On September 20, 2019, the Honorable James L. Robart, United States District Court Judge for the Western District of Washington, signed an order authorizing the initial 30-day interception of wire and electronic communications over TT1 (425-524-8918), used by Omar VAZQUEZ-LIMON, and TT2 (503-891-0312), used by an individual previously referred to as "PRIETO" (aka "PRIMO"), whom agents believed may be Alejandro AVALOS-MARTINEZ, and who has now been identified as Jose Elias BARBOSA.

22.     On October 25, 2019, the Honorable James L. Robart, United States District Court Judge for the Western District of Washington, authorized the initial 30-day interception of wire and electronic communications over TT4 (206-539-8614), used by Alan GOMEZ-MARENTES; TT6 (253-335-3991), used by Omar Paul VAZQUEZ-LIMON; and TT10 (425-523-2163), used by BARBOSA.

23.     On March 2, 2020, the Honorable James L. Robart, United States District Court Judge for the Western District of Washington, authorized the renewed 30-day interception of wire and electronic communications over TT21 (509-595-9070), used by Alan GOMEZ-MARENTES, and the initial 30-day interception of wire and electronic communications over TT23 (425-515-7605), used by Ruth GOMEZ-MARENTES; TT28 (206-480-7388), used by HUESOS and Alan GOMEZ-MARENTES; TT34 (425-523-2787), used by Jose Daniel ESPINOZA; and TT37 (425-321-9129), used by Jose Elias BARBOSA.

24.     On March 24, 2020, the Honorable Ricardo S. Martinez, Chief United States District Court Judge for the Western District of Washington, authorized the initial 30-day interceptions of wire and electronic communications over TT41 (253-398-4763), used by Jose Elias BARBOSA and TT44 (562-261-3666), used by Alan GOMEZ-MARENTES.

---

[1] Although authorized, some of the aforementioned phones were either not ultimately intercepted or interception was terminated early.  Details regarding those occurrences are not provided herein.

AFFIDAVIT of Task Force Officer Luke Brandeberry - 8

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

25.     On April 6, 2020, the Honorable Ricardo S. Martinez, Chief United States District Court Judge for the Western District of Washington, authorized the renewed 30-day interceptions of wire and electronic communications over TT34 (425-523-2787), used by Jose Daniel ESPINOZA, and the initial 30-day interceptions of wire and electronic communications over TT47 (626-277-5890), used by Alan GOMEZ-MARENTES, and TT48 (206-698-1700), used by Luis MAGANA-RAMIREZ.

26.     On April 20, 2020, the Honorable Ricardo S. Martinez, Chief United States District Court Judge for the Western District of Washington, authorized the continued 30-day interceptions of wire and electronic communications over TT41, used by Jose Elias BARBOSA, and the initial 30-day interceptions of wire and electronic communications over TT50 (253-886-8896), used by Leobardo RAMIREZ-MIRAMONTES, and TT51 (425-523-2104), used by Luis MAGANA-RAMIREZ.

27.     On April 30, 2020, the Honorable Ricardo S. Martinez, Chief United States District Court Judge for the Western District of Washington, authorized the renewed 30-day interception of wire and electronic communications over TT23 (425-515-7605), used by Ruth GOMEZ-MARENTES, and the initial 30-day interception of wire and electronic communications over TT59 (360-660-0756), used by MAGANA-RAMIREZ.

28.     On May 18, 2020, the Honorable Ricardo S. Martinez, Chief United States District Court Judge for the Western District of Washington, authorized the initial 30-day interception of wire and electronic communications over TT67 (562-382-0812) and various and changing cellular telephones used by Alan GOMEZ-MARENTES.

29.     On May 28, 2020, the Honorable Ricardo S. Martinez, Chief United States District Court Judge for the Western District of Washington, authorized the continued 30-day interception of wire and electronic communications over TT23 (425-515-7605), used by Ruth GOMEZ-MARENTES.

30.     On June 12, 2020, the Honorable Ricardo S. Martinez, Chief United States District Court Judge for the Western District of Washington, authorized the initial 30-day

interception of wire and electronic communications over TT64 (206-712-0700), used by Omar VAZQUEZ-LIMON.

31.     On June 30, 2020, the Honorable Ricardo S. Martinez, Chief United States District Court Judge for the Western District of Washington, authorized the renewed 30-day interception of wire and electronic communications over TT67 (562-382-0812), used by Alan GOMEZ-MARENTES, and the initial 30-day interception of wire and electronic communications over TT81 (206-705-0456), used by Jorge MONDRAGON, and TT84 (206-945-0907), used by Omar VAZQUEZ-LIMON.

32.     On August 12, 2020, the Honorable Ricardo S. Martinez, Chief United States District Court Judge for the Western District of Washington, authorized the initial 30-day interception of wire and electronic communications over TT96 (206-742-1092), used by Omar VAZQUEZ-LIMON.  Just after midnight on August 18, 2020, VAZQUEZ-LIMON abandoned TT96 at the Snoqualmie Casino.  Investigators reviewed casino surveillance video and it appeared that the phone was unintentionally left behind by VAZQUEZ-LIMON.  Investigators waited until August 21, 2020 hoping that VAZQUEZ-LIMON would recover the phone and start using it again, which he did not. Investigators terminated the interception of TT96 on August 21, 2020.

33.     On October 30, 2020, the Honorable Ricardo S. Martinez, Chief United States District Court Judge for the Western District of Washington, authorized the initial 30-day interception of wire and electronic communications over TT129 (206-712-3156) and various and changing cellular telephones used by Cesar VALDEZ-SANUDO.  On November 2, 2020, agents began intercepting communications over TT129 as well as TT134, a new phone number for VALDEZ-SANUDO.  On November 5, 2020, at 4:53pm, agents requested deactivation of interceptions over TT129, as the phone was no longer being used by VALDEZ-SANUDO.  On November 6, 2020, agents began interception of TT135, an additional phone obtained by VALDEZ-SANUDO.  On November 16, 2020, agents began interception of TT139, used by VALDEZ-SANUDO. On November 21, 2020, agents requested termination of TT134 and TT135, as

1  VALDEZ-SANUDO was no longer using the phones.  On November 26, 2020, agents
2  began interception of TT145, used by VALDEZ-SANUDO.  On November 27, 2020,
3  agents requested interception of TT147, used by VALDEZ-SANUDO.

4          34.     On December 7, 2020, the Honorable Ricardo S. Martinez, Chief United
5  States District Court Judge for the Western District of Washington, authorized the
6  continued interception of wire and electronic communications over TT139 and TT147,
7  and the various and changing cellular telephones used by Cesar VALDEZ-SANUDO.
8  On December 8, 2020, agents began interception of TT139 and TT147, in addition to
9  TT146 and TT150, VALDEZ-SANUDO's most recently identified phone.  The
10 interception of TT139 was terminated on December 9, 2020, after agents learned that the
11 phone was no longer active; the interception of TT146 was terminated on December 9,
12 2020, after agents learned that the phone was not being used by VALDEZ-SANUDO.
13 Investigators terminated interception of TT147, TT150 and TT158 on December 16,
14 2020.

15 **C.      Probable Cause for three phones belonging to Juan Antonio GONZALEZ-**
16 **         CARRILLO.**

17         35.     In August and September 2018, CS6 informed members of the HSI Seattle
18 HIDTA Task Force that s/he was aware of an individual trafficking heroin,
19 methamphetamine, cocaine, and counterfeit oxycodone (hereinafter "M30s") in King
20 County, Washington.  CS6 stated that an individual s/he knows as Toto, later identified
21 by agents as Juan Antonio GONZALEZ-CARRILLO, resides in the Kent, Washington
22 area, and sells pound level quantities of methamphetamine, heroin, and cocaine.  CS6
23 subsequently identified a photograph of Juan Antonio GONZALEZ-CARRILLO (from a
24 2014 visa application) as the individual CS6 knew as Toto.

25         36.     In December 2018, HSI Seattle used CS6 to conduct a controlled purchase
26 of 100 pills which contained fentanyl and a sample of heroin from GONZALEZ-
27 CARRILLO, who was living in Kent, Washington, at the time.

28

AFFIDAVIT of Task Force Officer Luke Brandeberry - 11

37.     In July 2019, CS6 provided GONZALEZ-CARRILLO an undercover agent's phone number, with the undercover agent posing as a customer.  On July 19, 2019, GONZALEZ-CARRILLO contacted the undercover agent using 702-619-6891 (TT5).  In a subsequent recorded call, GONZALEZ-CARRILLO and the undercover agent discussed GONZALEZ-CARRILLO's prices for methamphetamine (referred to as "tequila") and pills (referred to as "buttons").

38.     During the initial period of interception in this investigation, agents learned that GONZALEZ-CARRILLO was a supplier for the DTO and that DTO member Jose Elias BARBOSA was in significant debt to GONZALEZ-CARRILLO.  Specifically, on September 25, at 8:54pm (Session 2177), agents intercepted a call from TT2 (BARBOSA) to 206-539-8614 (TT4) (Alan GOMEZ-MARENTES).  During this call, GOMEZ-MARENTES told BARBOSA that "the dude" [a Mexico source], wanted GOMEZ-MARENTES to take care of TOTO's account with BARBOSA.  BARBOSA then suggested that GOMEZ-MARENTES should collect directly from TOTO, and BARBOSA would pay "here."  Based on the conversation, it appeared that the DTO held GONZALEZ-CARRILLO responsible for drug debt that GONZALEZ-CARRILLO believed should be assumed by BARBOSA.

39.     On June 5, 2020, the Oregon State Patrol (OSP) stopped a rental vehicle driving northbound approximately 20 miles per hour over the posted 55 mph speed limit.  OSP identified Julian PINEDA CASILLAS as the driver of the vehicle from his California driver's license.  Investigators knew PINEDA CASILLAS to be a DTO courier for MAGANA-RAMIREZ.[2]  In a subsequent consent search, OSP located approximately 28.8 pounds of methamphetamine and 5.4 pounds of heroin secreted in a rear quarter-panel of PINEDA CASILLAS' vehicle.

---

[2] On April 9, 2020, agents observed Julian PINEDA CASILLAS arriving in Washington at DTO member Jose Daniel ESPINOZA's residence, coinciding with intercepted communications which indicated a drug shipment was set to arrive.  Agents identified PINEDA CASILLAS based on his driver's license photograph.  Subsequent intercepted communications confirmed MAGANA-RAMIREZ and ESPINOZA received the shipment of drugs.  On April 26, 2020, agents observed PINEDA CASILLAS at MAGANA-RAMIREZ' residence in Washington, again coinciding with intercepted communications about the arrival of a drug shipment for MAGANA-RAMIREZ.

40.     Pursuant to a federal warrant, agents searched PINEDA CASILLAS' phone.  The search revealed multiple text and audio conversations between PINEDA CASILLAS and contact "Toto" (323-534-9177).  Agents extracted audio messages from the user of 323-534-9177.  When played for wire room linguists and agents familiar with the voice of GONZALEZ-CARRILLO (based on recordings from the above investigation into GONZALEZ-CARRILLO), each identified the audio as the voice of GONZALEZ-CARRILLO.  Agents also extracted conversations between PINEDA CASILLAS and contact "Meka" (MAGANA-RAMIREZ, using 503-885-4458, a number previously identified for MAGANA-RAMIREZ through execution of a cell site simulator warrant).

41.     The WhatsApp messages between PINEDA CASILLAS, GONZALEZ-CARRILLO, and MAGANA-RAMIREZ showed that GONZALEZ-CARRILLO supplied PINEDA CASILLAS with heroin on May 28, 2020 for the DTO in Washington State.  On that date, GONZALEZ-CARRILLO told PINEDA CASILLAS he had the "hairy one" [a known code for heroin] and discussed the best time to provide it to PINEDA CASILLAS.  GONZALEZ-CARRILLO then quoted PINEDA CASILLAS a price of "15" for the drugs.

42.     Following this conversation with GONZALEZ-CARRILLO, PINEDA CASILLAS had the following WhatsApp text exchange with MAGANA-RAMIREZ. The following WhatsApp texts took place between 9:44 a.m. and 11:25 a.m. on May 28, 2020:

| PINEDA CASILLAS: | Pops. |
| PINEDA CASILLAS: | Please confirm. |
| PINEDA CASILLAS: | I am going to see Toto in a little bit. |
| PINEDA CASILLAS: | For the hairy one [heroin] |
| PINEDA CASILLAS: | He (TOTO) told me that there are 15. |
| PINEDA CASILLAS: | Is that okay? |
| MAGANA-RAMIREZ: | It's all good |

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1      43.     Based on my training and experience I believe that the above

2  communications between PINEDA CASILLAS and GONZALEZ-CARRILLO are a

3  discussion about GONZALEZ-CARRILLO supplying PINEDA with the hairy one,

4  which I know to be a slang term for heroin.  GONZALEZ-CARRILLO and PINEDA

5  CASILLAS then engaged in a discussion about where to meet.  Following these

6  communications, PINEDA CASILLAS then contacted MAGANA-RAMIREZ to notify

7  him that he was going to see GONZALEZ-CARRILLO to pick up the heroin.  PINEDA

8  CASILLAS then checked the amount with MAGANA-RAMIREZ, demonstrating that

9  PINEDA CASILLAS was bringing the heroin for MAGANA-RAMIREZ.

10      44.     Subsequent text and audio communications indicated that, despite

11  attempting to supply PINEDA CASILLAS with methamphetamine as well,

12  GONZALEZ-CARRILLO was unable to secure a shipment of methamphetamine from

13  Mexico in time for PINEDA CASILLAS to obtain it before driving to Washington State.

14      45.     Telephone toll analysis showed that GONZALEZ-CARRILLO

15  discontinued use of 323-534-9177 on June 8, 2020, approximately two days after

16  PINEDA CASILLAS' stop in Oregon on June 5, 2020.  T-Mobile subscriber data showed

17  that telephone number 562-388-0172 (TT94) was activated that same date, on June 8,

18  2020, and subscribed to "PEDRO CARILLO" at "15050 LA MIRADA BLVD LA

19  MIRADA CA 90638-4743."

20      46.     During the week of July 13, 2020, DEA TFO Luke Brandeberry contacted

21  TT94 and recorded a call with its user.  Following the call, Spanish-speaking monitors

22  familiar with GONZALEZ-CARRILLO's voice listened to the call to TT94 and

23  identified the user of TT94 as GONZALEZ-CARRILLO based on the audio clips of

24  GONZALEZ-CARRILLO pulled off of PINEDA CASILLAS' phone.

25      47.     In the month of July 2020, CS6 stated that s/he had most recently received

26  a call from GONZALEZ-CARILLO at 442-235-8637 (TT95).  Investigators determined

27  this to be another phone for GONZALEZ-CARRILLO based on subscriber data and toll

28  analysis.

48.     On July 17, 2020, investigators obtained a federal tracking warrant for both TT94 and TT95.

49.     On July 20, 2020 pings for TT94 and TT95 (GONZALEZ-CARRILLO) placed him in the area of Perris, California.  Agents know from prior GPS tracking of GONZALEZ-CARRILLO's phones between July and September 2019 that he resided in this same area of California.

50.     On July 21, 2020, DEA SA Jared Gibb, TFO Lance Pearson, and FBI SA Ricky McKinney established physical surveillance in the area of Gardena, California, the area where TT94 was providing pings.  At approximately 3:30pm, TT94 provided pings with a certainty of 16 meters at Las Islas Marias restaurant at 444 W Gardena Blvd, Gardena, California.  Agents identified GONZALEZ-CARRILLO at this location, in the vicinity of TT94.  Agents then followed GONZALEZ-CARRILLO and his companion to 731 West 148th Street, Gardena, California, believed to be a residence used by GONZALEZ-CARRILLO and some of his family members.  Pings for both TT94 and TT95 showed that GONZALEZ-CARRILLO stayed overnight at this location. GONZALEZ-CARRILLO left the location the following morning but returned for at least part of the evening on July 22, 2020.

51.     On July 28, 2020, DEA agents executed a federal search warrant at GONZALEZ-CARRILLO's residence at 731 West 148th Street, Gardena, California. During the execution of this search warrant, four individuals including Gerardo CARRILLO-MARTINEZ were present.  Although GPS pings for one of GONZALEZ-CARRILLO's cell phones (TT94) showed that the phone was still at this residence, GONZALEZ-CARRILLO was not located.  CARRILLO-MARTINEZ indicated that GONZALEZ-CARRILLO was at the residence approximately two weeks prior; however, CARRILLO-MARTINEZ believed that GONZALEZ-CARRILLO had driven up to Washington State.

52.     During the search, agents located various drug scales, drug packaging, a heat sealer, and three cell phones on a shelf, along the east side of the garage.  One of

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  these three phones was identified as TT94 after investigators placed a voice call to TT94.

2  A wallet with Gerardo CARRILLO-MARTINEZ's Mexico identification card was

3  located next to the three cell phones.  However, investigators did not find CARRILLO-

4  MARTINEZ (or any of the other occupants) in the garage and none of those persons

5  claimed that the three phones located in the garage belonged to them.  Knowing that

6  GONZALEZ-CARRILLO's known phone TT94 was found sitting with the other two

7  phones, and that GONZALEZ-CARRILLO has a history of maintaining multiple

8  simultaneous phones for drug trafficking, agents believe that all three phones belonged to

9  GONZALEZ-CARRILLO and were more than likely used to further his drug activities.

10  **D.    Probable Cause for BARBOSA's Phone**

11          53.     Agents identified BARBOSA as a drug redistributor who previously

12  worked for GONZALEZ-CARRILLO and Alan GOMEZ-MARENTES.  Agents

13  attempted to locate and arrest BARBOSA on July 28, 2020, during the coordinated arrest

14  of multiple DTO members but were unable to locate him.

15          54.     On September 15, 2020, U.S. Magistrate Judge Michelle L. Peterson signed

16  a search warrant authorizing agents to obtain real-time GPS location data for telephone

17  253-754-4340 (TT116), which was believed to be used by BARBOSA.

18          55.     On the morning of September 30, 2020, GPS location data showed that the

19  device was located near the intersection of Kent Kangley Road and 114th Ave. SE in

20  Kent, WA.  At approximately 1:55 p.m., GPS location data indicated that the device was

21  located in an apartment complex located at 11239 SE 260th St, Kent, WA.  At

22  approximately 2:00 p.m., agents established surveillance at a building within the

23  apartment complex at which the phone was located (with an accuracy of 6 meters, per

24  GPS location data).  Agents observed BARBOSA standing on the balcony of an upper

25  level apartment in the building.  Agents recognized BARBOSA based on multiple prior

26  surveillance operations in this investigation.  Agents then established surveillance on all

27  sides of the building.

28

AFFIDAVIT of Task Force Officer Luke Brandeberry - 16

56.    At 2:20 p.m., agents observed BARBOSA walk out of the apartment building to the parking lot, and approach a parked vehicle.  Agents moved in and took BARBOSA into custody as he entered the vehicle, placing him in handcuffs.  During a pat-down search, agents located **a blue Motorola cell phone** (marked as Exhibit N-32) in BARBOSA's pants pocket.

57.    During a post-arrest interview, BARBOSA denied involvement in drug trafficking.  With respect to the blue Motorola cell phone, BARBOSA consented to a search of the phone.  When asked to unlock the device, BARBOSA claimed to try to unlock the device, but was unsuccessful.  BARBOSA then looked at the phone and stated that he did not even believe that it was his phone.  Agents believe that BARBOSA did not want agents to have access to his phone.

58.    BARBOSA was transported to the Federal Detention Center and booked on the warrant in the immediate investigation.  BARBOSA's phone was transported to the DEA Tacoma Resident Office and booked into evidence.

## VI.    COMMON CHARACTERISTICS OF DRUG TRAFFICKERS AND MONEY LAUNDERERS

59.    Based upon my training, experience, and participation in this and other investigations involving narcotics trafficking, my conversations with other experienced investigators and law enforcement investigators with whom I work, and interviews of individuals who have been involved in the trafficking of methamphetamine, heroin and other narcotics, I have learned and know the following.

60.    Guns are commonly carried by traffickers for protection; especially when traveling with a high value amount of narcotics or currency making them a more likely target of robbery or thefts. Many times, these guns are purchased or borrowed from co-conspirators or other traffickers and evidence of these transactions such as videos, photos, and text communications are stored on cellphones.

61.    Drug traffickers often attempt to legitimize their cash drug proceeds.  To accomplish this goal, drug traffickers use financial institutions and their attendant

1   services, securities, cashier's checks, safe deposit boxes, money drafts, real estate, shell

2   operations, and business fronts.  I know from my training and experience that records and

3   conversations relating to money laundering are often found on the cellular telephones

4   used by drug traffickers.

5      62. Drug traffickers use mobile electronic devices including cellular telephones

6   and other wireless communication devices to conduct their illegal activities.  For

7   example, traffickers of controlled substances commonly maintain records of addresses,

8   vehicles, or telephone numbers which reflect names, addresses, vehicles, and/or

9   telephone numbers of their suppliers, customers and associates in the trafficking

10   organization. It is common to find drug traffickers keeping such records of said associates

11   in cellular telephones and other electronic devices.  Traffickers often maintain cellular

12   telephones for ready access to their clientele and to maintain their ongoing narcotics

13   business.  Traffickers frequently change their cellular telephone numbers to avoid

14   detection by law enforcement, and it is common for traffickers to use more than one

15   cellular telephone at any one time.

16      63. Drug traffickers use cellular telephones to maintain contact with their

17   suppliers, distributors, and customers.  They prefer cellular telephones because, first, they

18   can be purchased without the location and personal information that landlines require.

19   Second, they can be easily carried to permit the user maximum flexibility in meeting

20   associates, avoiding police surveillance, and traveling to obtain or distribute drugs.

21   Third, they can be passed between members of a drug conspiracy to allow substitution

22   when one member leaves the area temporarily.  Since cellular phone use became

23   widespread, every drug dealer I have interacted with has used one or more cellular

24   telephones for his or her drug business.  I also know that it is common for drug traffickers

25   to retain in their possession phones that they previously used, but have discontinued

26   actively using, for their drug trafficking business.  Based on my training and experience,

27   the data maintained in a cellular telephone used by a drug dealer is evidence of a crime or

28   crimes.  This includes the following:

AFFIDAVIT of Task Force Officer Luke Brandeberry - 18

1      a.  The assigned number to the cellular telephone (known as the mobile

2 directory number or MDN), and the identifying telephone serial number (Electronic

3 Serial Number, or ESN), (Mobile Identification Number, or MIN), (International Mobile

4 Subscriber Identity, or IMSI), or (International Mobile Equipment Identity, or IMEI) are

5 important evidence because they reveal the service provider, allow us to obtain subscriber

6 information, and uniquely identify the telephone.  This information can be used to obtain

7 toll records, to identify contacts by this telephone with other cellular telephones used by

8 co-conspirators, to identify other telephones used by the same subscriber or purchased as

9 part of a package, and to confirm if the telephone was contacted by a cooperating source.

10      b.  The stored list of recent received calls and sent calls is important evidence.

11 It identifies telephones recently in contact with the telephone user.  This is valuable

12 information in a drug investigation because it will identify telephones used by other

13 members of the organization, such as suppliers, distributors and customers, and it

14 confirms the date and time of contacts.  If the user is under surveillance, it identifies what

15 number he called during or around the time of a drug transaction or surveilled meeting.

16 Even if a contact involves a telephone user not part of the conspiracy, the information is

17 helpful (and thus is evidence) because it leads to friends and associates of the user who

18 can identify the user, help locate the user, and provide information about the user.

19 Identifying a defendant's law-abiding friends is often just as useful as identifying his

20 drug-trafficking associates.

21      c.  Stored text messages are important evidence, similar to stored numbers.

22 Investigators can identify both drug associates, and friends of the user who likely have

23 helpful information about the user, his location, and his activities.

24      d.  Photographs and videos on a cellular telephone are evidence because they

25 help identify the user, either through his or her own picture, or through pictures of

26 friends, family, and associates that can identify the user.  Pictures also identify associates

27 likely to be members of the drug trafficking organization.  Some drug traffickers

28 photograph groups of associates, sometimes posing with weapons and showing

1   identifiable gang signs.  Also, digital photos often have embedded "geocode" information

2   within them.  Geocode information is typically the longitude and latitude where the photo

3   was taken.  Showing where the photo was taken can have evidentiary value.  This

4   location information is helpful because, for example, it can show where coconspirators

5   meet, where they travel, and where assets might be located

6          e.   Stored address records are important evidence because they show the user's

7   close associates and family members, and they contain names and nicknames connected

8   to phone numbers that can be used to identify suspects.

9          f.   It is common for drug traffickers to use encrypted means of

10  communication, such as WhatsApp, Signal, Wickr, and Telegram, to attempt to avoid

11  detection by law enforcement.  It is common for drug traffickers to install and use these

12  apps on their phones in order to make encrypted calls and send encrypted messages.

13                          **VII.   CONCLUSION**

14  64.     For the reasons set forth above, I believe there is probable cause to believe

15  that evidence, fruits, and instrumentalities of violations of Title 21, United States Code,

16  Sections 841(a)(1), 843(b), 846, and 952, and Title 18, United States Code, Sections 1956

17  and 1957, will be found in a search of the four cell phones, more fully described in

18  Attachments A, and A1-A4.

19  //

20  //

21  //

22  //

23  //

24  //

25  //

26  //

27  //

28  //

AFFIDAVIT of Task Force Officer Luke Brandeberry - 20

1    65.     Because this warrant seeks only permission to examine cellular telephones
2  already in law enforcement's possession, the execution of this warrant does not involve
3  the physical intrusion onto a premises.  Consequently, I submit there is reasonable cause
4  for the Court to authorize execution of the warrant at any time in the day or night.
5
6
7                                           Luke A. Brandeberry
8                                           Task Force Officer
9                                           Drug Enforcement Administration
10
11        The above-named agent provided a sworn statement attesting to the truth of the
12  contents of the foregoing on the 10th day of March 2021.
13
14
15
16                                           THERESA L. FRICKE
17                                           UNITED STATES MAGISTRATE JUDGE
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## ATTACHMENT A
### Cellular Phones To Be Searched

This warrant authorizes the government to search the following locations and vehicles for evidence and/or fruits of the commission of the following crimes, as further described in Attachment B hereto:  distribution and possession with intent to distribute controlled substances, in violation of Title 21, United States Code, Section 841(a)(1), and conspiracy to commit these offenses in violation of Title 21, United States Code, Section 846; use of a communications facility in furtherance of a felony drug offense in violation of Title 21, United States Code, Section 843(b); importation of controlled substances, in violation of Title 21, United States Code, Section 952; and laundering of monetary instruments in violation of Title 18, United States Code, Sections 1956 and 1957.

Attachment A - 1

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

**<u>ATTACHMENT A1</u>**

2      A black Alcatel flip cell phone seized during the execution of a federal search

3 warrant at the residence of Juan Antonio GONZALEZ-CARRILLO (731 West 148th

4 Street, Gardena, California), and listed in DEA reports as Exhibit N-107.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

## **ATTACHMENT A2**

2          A Samsung Galaxy Note 9 cell phone seized during the execution of a federal

3    search warrant at the residence of Juan Antonio GONZALEZ-CARRILLO (731 West

4    148th Street, Gardena, California), and listed in DEA reports as Exhibit N-108.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

## **ATTACHMENT A3**

2

3       A white Apple Iphone seized during the execution of a federal search warrant at

4   the residence of Juan Antonio GONZALEZ-CARRILLO (731 West 148th Street,

5   Gardena, California), and listed in DEA reports as Exhibit N-109.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Attachment A - 4

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

**ATTACHMENT A4**

2         A blue Motorola cell phone, seized during the arrest of fugitive Jose Elias

3     BARBOSA, and listed in DEA reports as Target Telephone 116 (TT116) and Exhibit N-

4     32.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>ATTACHMENT B</u>**

**Items to be Seized**

From the cellular telephones listed in Attachment A of this warrant, the government is authorized to search for and seize the following items, which are evidence and/or fruits of the commission of the following crimes:  distribution and possession with intent to distribute controlled substances, in violation of 21 U.S.C. § 841(a)(1), and conspiracy to commit these offenses, in violation of 21 U.S.C. § 846; use of a communications facility in furtherance of a felony drug offense, in violation of 21 U.S.C. § 843(b); importation of controlled substances, in violation of 21 U.S.C. § 952; money laundering, and conspiracy to commit money laundering, in violation of 18 U.S.C. §§ 1956 and 1957:

- Assigned telephone number and other identifying numbers (e.g., ESN, MIN, IMSI, IMEI);
- Stored list of recent received, sent, or missed calls;
- Stored address records and stored contact information;
- Stored photographs and videos related to the aforementioned crimes of investigation, such as photographs and videos of narcotics, currency, guns or other weapons, tracking numbers, codes, account information, suspected criminal activity, and/or the user of the phone or co-conspirators, including any GPS data associated with the photo or video;
- Stored messages that relate to the above-listed federal crimes or that may show the user of the phone and/or coconspirators, including Apple iMessages, Blackberry Messenger messages, WhatsApp messages, or other similar messaging services where the data is stored on the telephone;
- Stored data relevant to financial transactions, or physical/electronic trades of cash for goods/services (trade-based money laundering); and
- Stored tracking or navigation data.

Attachment B - 1